UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>JESUS OCTAVIO ARREOLA-<br>BELTRAN,<br>      Defendant. | Case No. 1:11-cr-00096-BLW<br><br>**MEMORANDUM DECISION AND ORDER ON MOTION IN LIMINE** |

## INTRODUCTION

The Court has before it Defendant's Motion in Limine and Alternative Motion to Suppress (Dkt. 53). Defendant seeks to exclude evidence of a prior arrest and guilty plea under Federal Rule of Evidence 404(b). He also seeks to prevent the Government from using his guilty plea to a prior crime as impeachment evidence under Federal Rule of Evidence 609(a). Alternatively, Defendant moves to suppress evidence obtained during the prior arrest under *Terry v. Ohio*, 392 U.S. 1 (1961). The Court conducted an evidentiary hearing on October 25, 2011 and now issues its decision.

**MEMORANDUM DECISION AND ORDER – 1**

## BACKGROUND

Defendant Arreola-Beltran is charged with conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. The Government alleges that in March 2011, Arreola-Beltran arranged for the sale of methamphetamine to an undercover detective. Trial is scheduled for October 31, 2011.

The Government indicates that at trial, it will seek to introduce evidence related to Wilberto Lozada-Olmo's March 2008 arrest for trafficking in methamphetamine, as well as Lozada-Olmo's guilty plea to possession of methamphetamine. At the evidentiary hearing in this case, it was established that Lozada-Olmo and the Defendant before this Court – Mr. Arreola-Beltran – are the same person.

## ANALYSIS

**1.  Evidence of Prior Bad Act Under Rule 404(b)**

Evidence of prior bad acts is not admissible to show that the defendant has a bad character and is prone to criminal activity, but may be introduced to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). To prove that the evidence is offered for one of these reasons, the Government must show that the evidence:

(1) proves a material element of the current offense,

(2) if admitted to prove intent, is similar to the offense charged,

(3) is based on sufficient evidence, and

(4) is not too remote in time.

**MEMORANDUM DECISION AND ORDER – 2**

*United States v. Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004). The Government must also show that the evidence satisfies Federal Rule of Evidence 403 such that its probative value is not outweighed by its prejudicial effect. *Id.*

At the evidentiary hearing before this Court, Caldwell Police Corporal Kristopher Finley testified that on the night of March 1, 2008, he was on patrol with the Street Crimes Unit in an area known for drug deals, when he saw two Hispanic males talking at the window of a car stopped in the middle of the road. The two men – later identified as Wilberto Lozada-Olmo and Jasihel J. Beltran-Alcala – looked in the officer's direction and then took off running.

Corporal Finley followed the men to another intersection and called the men back. He saw Lozada-Olmo make a throwing motion, downward to his right, with his right hand. Corporal Finley says that the men made him nervous because they had "shifty" body movements – "they kept looking around as if someone was lurking nearby or as if they were looking for a place to run." Also, Beltran-Alcala turned his back to the officer several times, and seemed to be "messing with something under his jacket."

After asking the men for identification, Corporal Finley called for backup and asked the men to put their hands on his car so he could "Terry pat" them. He found $800 in cash in Lozada-Olmo's pocket.

Shortly after finding the cash, Corporal Finley saw that Beltran-Alcala – who had turned his back to Corporal Finley – drop a baggie filled with a white crystal substance

and kick it under Corporal Finley's car. The officers found four baggies under the car, each containing roughly one ounce of methamphetamine.

Both men were charged with trafficking in methamphetamine under Idaho Code § 37-2732B(a)(4). In June 2008, Lozada-Olmo pled guilty to possession of methamphetamine, but failed to appear for sentencing. Lozada-Olmo indicates that he has filed a motion to withdraw his guilty plea in the state case.

### A.   Material Element

As for the first part of the test articulated above – proof of a material element of the charged crime – the Government first argues that the prior arrest and guilty plea prove *knowledge,* which is a material element of the charged crimes. More specifically, the Government alleges that the prior acts show Arreola-Beltran's "specialized knowledge" of methamphetamine, methamphetamine sales, and the manner in which methamphetamine is packaged for sale.

The Ninth Circuit has emphasized that "[w]hen the government's theory is one of knowledge – as here . . . the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Mayans*, 17 F.3d 1174, 1181-82 (9th Cir. 1994).

#### 1.   The Guilty Plea

Turning first to the guilty plea, Lozada-Olmo was charged with trafficking under Idaho Code § 37-2732B(a)(4)(A), but ultimately pled guilty to simple possession.

**MEMORANDUM DECISION AND ORDER – 4**

Neither offense requires intent to distribute. *See id.* ("Any person who knowingly delivers or brings into this state, or who is knowingly in actual or constructive possession of . . . twenty-eight (28) grams or more of methamphetamine . . . is guilty of a felony . . . .."). Further, the Government has not cited any cases where a guilty plea (or even a conviction) for possession without intent to distribute was held to have been properly admitted under Rule 404(b) to show specialized knowledge of distribution practices.

The Government cites cases where a prior drug distribution conviction (or, in one case, a drug manufacturing conviction) was used to show knowledge of distribution practices.[1] These cases are distinguishable, however. The offense Lozada-Olmo pleaded to is more akin to a user-quantity drug offense than to a drug distribution or manufacturing offense. In *United States v. Ramirez-Robles,* 386 F.3d 1234, 1243(9th Cir. 2004), the Ninth Circuit held that a user-quantity drug possession conviction could not be admitted to show knowledge of distribution practices. Rather, such a conviction may be admitted under Rule 404(b) only for the purpose of showing that the defendant knows what the drug is, and how to identify it. *Id.*; *see also United States v. Howell*, 231 F.3d 615, 628 (9th Cir. 2000) (prior convictions for possession of cocaine, and possession with

---

[1] *See, e.g., United States v. Arambula-Ruiz,* 987 F.2d 599, 603 (9th Cir. 1993) (conviction for possession of heroin with intent to distribute relevant to show knowledge in charged offenses of possession of heroin with intent to distribute and conspiracy to possess heroin with intent to distribute); *United States v. Ramirez-Robles,* 386 F.3d 1234, 1242-43 (9th Cir. 2004) (prior conviction for selling methamphetamine relevant to show specialized knowledge regarding methamphetamine transactions); *United States v. Montgomery*, 150 F.3d 983, 1001 (9th Cir. 1998) (jury could infer knowledge of methamphetamine distribution practices from prior conviction for manufacturing methamphetamine).

intent to distribute cocaine "tend to show that Howell knew the substance in the bag was a narcotic."). Thus, the guilty plea here tends to show that Beltran-Alcala knows what methamphetamine is, and how to identify it.

The Court rejects the Government's argument that Lozada-Olmo's guilty plea shows more specialized knowledge regarding distribution practices. That argument is based on the Government's theory that when Lozada-Olmo pleaded guilty to possession, he necessarily admitted to constructively possessing the four baggies of methamphetamine found at Beltran-Alcala's feet. A guilty plea admits the truth of the essential elements of the charge, as filed in the information. *See Hays v. State*, 747 P.2d 758 (Idaho Ct. App.), *vacated in part on other grounds*, 766 P.2d 785 (Idaho 1988). But the state-court information is not before the Court and no such precise admission is contained in the record. Further, the fact that Lozada-Olmo may have discussed constructive possession with his attorney before entering the plea does not constitute such an admission.

### 2. The Arrest

The arrest presents a closer issue, but the Court nonetheless concludes that the Government has failed to show that the arrest tends to prove specialized knowledge of distribution practices in this case. The key problem is that the facts underlying the arrest do not directly implicate Lozada-Olmo in any drug sale. Rather, the Government relies entirely on circumstantial evidence to assert both that a sale was underway, and that Lozada-Olmo was involved.

**MEMORANDUM DECISION AND ORDER – 6**

The Ninth Circuit's decision in *United States v. Sanchez*, 47 Fed. Appx. 467, 470 (9th Cir. 2002), although unpublished, is instructive. In *Sanchez*, the district court admitted evidence of the defendants' prior arrest for possession of pseudoephedrine tablets with intent to manufacture methamphetamine. The arresting officer testified that he found what appeared to be pseudoephedrine tablets in the vehicle, but the officer "did not testify that Sanchez himself possessed the tablets, or that he was shown or otherwise saw the tablets seized during the prior arrest." *Id*. The Ninth Circuit held that the prior arrest evidence was not properly admitted because "there was no logical basis for the jury to infer from the prior arrest that Sanchez knew the tablets found in his possession were pseudoephedrine or that such tablets could be used to manufacture methamphetamine." *Id.* The same is true here. The facts underlying the arrest do not provide a sufficient basis for the jury to conclude that Lozada-Olmo was both involved in a drug sale and thereby gained specialized knowledge of drug distribution practices. [1]

---

[1] Later in this decision, the Court concludes that Officer Finley had probable cause to arrest Lozada-Olmo. That finding is not inconsistent with the Court's conclusion here, since a finding of probable cause requires only that an officer have knowledge sufficient to lead a person of reasonable caution to believe that an offense has been committed by the person being arrested. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007).

**MEMORANDUM DECISION AND ORDER – 7**

B.  **Similarity**

When the evidentiary hypothesis is intent, the Ninth Circuit requires substantial similarity between the bad acts evidence and the crime charged. *Arambula–Ruiz*, 987 F.2d at 603. "If the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action." *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir.1989)).

Here, the prior act and the current offense are not similar enough to show intent in this case. As noted, Lozada-Olmo pleaded guilty to possession *without intent* to distribute. In *Ramirez-Robles*, the Ninth Circuit held that the similarity test was not met where government sought to introduce a prior, user-quantity conviction to prove familiarity with distribution practices as opposed to familiarity with the drug itself. 386 F.3d at 1243. Under *Ramirez-Robles*, the prior guilty plea does not tend to prove intent in this case.

As for the arrest, the Court has already concluded that circumstantial evidence does not sufficiently show that Arreola-Beltran was directly involved in the sale. As such, the Court cannot conclude that the evidence from the prior act shows intent here.

C.  **Sufficiency of the Evidence**

The Court has some reservations regarding the guilty plea serving as sufficient proof of the elements described above, given that the defendant (Lozada-Olmo) has made a motion to withdraw that plea in state court. Nonetheless, for purposes of this motion,

the Court will assume that the guilty plea is sufficient proof of possession without intent to distribute.

Corporal Finley has competently testified as to the March 2008 arrest, showing that Lozada-Olmo was arrested for methamphetamine trafficking. For the reasons discussed, however, the Court finds that the facts underlying the arrest do not provide a sufficient basis for a jury to infer intent or the specialized knowledge of distribution practices in this case.

### D. Remoteness in Time

The prior acts – which occurred three years before the charged crime – are not too remote in time. *See, e.g., Arambula–Ruiz*, 987 F.2d at 603–04 (noting that a five-year-old conviction is not too remote).

### E. Balancing Under Rule 403

The Court finds that while the prior acts evidence may have some probative value here, the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. As discussed above, the guilty plea shows possession, which could theoretically be used to show that Arreola-Beltran knows what methamphetamine is. But the arrest itself is based solely on circumstantial evidence and does not show specialized knowledge or intent. On balance the probative value of the prior acts evidence is very limited, while the danger of prejudice is great. The court will therefore grant Defendants' motion in limine. The Court will, of course, be open to

revisiting this determination at trial, should the issue of Arreola-Beltran's knowledge become more significant than it now appears to be.

2.      **Impeachment Under Rule 609**

The Government has served notice on Defendant Arreola-Beltran that should he take the witness stand during trial, the Government intends to use evidence of Lozada-Olmo's plea of guilty to felony drug possession charges to impeach Arreola-Beltran under Rule 609(a). Examination of the admissibility of evidence under Rule 404(b) is not necessarily the same as the inquiry under Rule 609(a). *See United States v. Ohler*, 169 F.3d 1200, 1201 (9th Cir. 1999).

A plea of guilty – especially where defendant has yet to be sentenced – is not the same as a conviction, for purposes of a Rule 609 impeachment analysis. *United States v. Lee*, 509 F.2d 400, 404 (D.C. Cir. 1974); *United States v. Semensohn*, 421 F.2d 1206, 1207 (2nd Cir. 1970). Although there are no cases on point in this circuit, the Ninth Circuit has found impeachment with a guilty verdict is appropriate, reasoning that "[t]he jury's verdict requires nothing more than a ministerial act (its entry) to constitute judgment." *United States v. Canaday*, 466 F.2d 1191, 1192 (9th Cir. 1972). However, the rationale in *Canday* does not apply to a guilty plea. Under Idaho law, a guilty plea requires more than a ministerial act to constitute a judgment. Rather, that guilty plea only becomes a judgment upon the imposition of a sentence. And, significantly, until that sentencing occurs, a defendant is entitled to withdraw a plea of guilty if they can show a "just reason" for doing so and the prosecution is unable to show that prejudice would

result if the plea were withdrawn. *State v. Flowers*, 249 P.3d 367, 370 (Idaho 2011). Given this distinction, the Government will not be permitted to use Lozada-Olmo's guilty plea to impeach him under Rule 609. This ruling, of course, is subject to reconsideration in the unlikely event that Lozada-Olmo's motion to withdraw his guilty plea is denied and he is sentenced in state court prior to his taking the witness stand in this proceeding.

**3.     Motion to Suppress**

Because the Court is granting Arreola-Beltran's motion in limine, excluding evidence of prior bad acts or convictions under Rules, 403 and 609(a), it is probable that the Court will not need to address Defendant's motion to suppress at this time. However, the motion in limine was granted conditionally. Where testimony or other evidence at trial invites – as rebuttal – the evidence now excluded, Defendant's motion to suppress would be squarely before the Court. The Court will therefore address the suppression issue now, to avoid delay and confusion at trial.

As noted by the Government in opposing the suppression motion, Lozada-Olmo filed the same motion to suppress in his state court proceeding, and the motion was denied. The first question is therefore the effect of the state court's prior order denying Lozada-Olmo's suppression motion.

A state court's ruling is binding on a federal court in subsequent proceedings only if it is binding under the state's collateral estoppel law. *Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997) (citing *Haring v. Prosise*, 462 U.S. 306, 313-14 (1983)).

The Idaho Supreme Court has identified five factors that must be present for collateral estoppel to bar re-litigation of an issue decided in a prior proceeding:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Rodriguez v. Dep't of Correction*, 29 P.3d 401, 404 (Idaho 2001) (other citations omitted). In this case, factors (2), (3), and (5) are undisputedly satisfied – Defendant Arreola-Beltran seeks to suppress the same evidence that Defendant Lozada-Olmo sought to suppress in state court, namely the $800 in cash found on Lozada-Olmo when he was frisked by Corporal Finley. Defendant has not raised any issue whether Lozada-Olmo had a full and fair opportunity to litigate the suppression issue in state court, so this Court presumes the first factor is also satisfied.

With respect to the fourth factor, the Court finds that this element is not satisfied; there was no final judgment on the merits in Lozada-Olmo's criminal matter because he fled after agreeing to plead guilty, and was never sentenced. The Court therefore finds that collateral estoppel does not bar its consideration of whether the evidence seized during Lozada-Olmo's arrest should be suppressed. However, as discussed below, the Court reaches the same conclusion as the state court.

Under *Terry*, a warrantless protective search based on reasonable suspicion must be strictly "limited to that which is necessary for the discovery of weapons which might

**MEMORANDUM DECISION AND ORDER** – 12

be used to harm the officer or others nearby." *Terry*, 392 U.S. 1, 26 (1968).  Such a search must not go beyond that which is necessary to determine if the suspect is armed.  Also under *Terry*, the scope of the officer's protective search is confined to that "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry v. Ohio*, 392 U.S., at 29.  An item that an officer determines to be contraband during a protective search may also be seizable, but only where it is immediately recognizable by its "plain feel" without expanding the search beyond its protective purpose.  *Minnesota v. Dickerson*, 508 U.S. 366 (1993) (finding that officer exceeded scope of search when he had to manipulate a lump in the suspect's pocket, already determined not to be a weapon, to determine that it was a rock of cocaine).  Thus, an officer may not remove items from a suspect's pockets that are not by their plain feel, a weapon or contraband.

Corporal Finley's removal of the $800 in cash from Lozada-Olmo's pocket was not within the proper scope of a protective search.  He candidly testified that he believed that what he felt was a wallet.   Since a wallet would not constitute contraband, the currency was improperly obtained at the time of Lozada-Olmo's arrest.

However, the Government argues that even if the seizure of the currency exceeded the scope of a proper Terry-type frisk, the currency is still admissible under the inevitable discovery doctrine, since Lozada-Olmo would have been searched at the jail following his arrest for drug trafficking.  Under the inevitable discovery doctrine, where a "reasonable probability of discovery existed . . . based on the information possessed and

**MEMORANDUM DECISION AND ORDER – 13**

investigations being pursued" before law enforcement's unlawful conduct, a court may find that the otherwise excludable evidence is admissible because its discovery was inevitable. *United States v. Lang*, 149 F.3d 1044, 1047 (9th Cir. 1998).

According to Corporal Finley, a suspect who is arrested and processed at the jail must remove all pocketed items and other personal effects. It would thus appear, that there is a "reasonable probability" that the $800 in currency would inevitably have been discovered, based upon Officer Finley's decision to place Lozada-Olmo under arrest for drug trafficking. *Id.* However, that argument is dependent upon the validity of that arrest. Thus, the Court must consider whether Officer Finley had probable cause to arrest Lozada-Olmo.

In determining whether probable cause for arrest exists, the courts look to the totality of circumstances known to the arresting officer at the time. *Rohde v. City of Roseberg*, 137 F.3d 1142, 1144 (9th Cir. 1998). An arresting officer must have "reasonably trustworthy information sufficient to warrant a prudent person" to believe the suspect has committed a crime. *United States v. Butler*, 74 F.3d 916, 920 (9th Cir. 1996) (other citation omitted). Of course, in making that assessment, we must exclude the cash seized from Lozada-Olmos's pants pocket, since it was improperly obtained during Corporal Finley's frisk.

Here, Corporal Finley stopped suspects Lozada-Olmo and Beltran-Alcala at night in an area known for drug trafficking. The two suspects initially ran from him. Lozada-Olmo appeared to throw something. Beltran-Alcala turned his back to the officer several

**MEMORANDUM DECISION AND ORDER** – 14

times, and made unknown movements under his jacket. Both suspects appeared nervous. Later, after back-up officers arrived, Corporal Finley saw Beltran-Alcala push baggies of methamphetamine under the officer's car with his foot.

As mentioned before, the facts here do not present an obvious or strong case of probable cause for arrest. It is possible for someone to be in the wrong place at the wrong time with the wrong people, to run upon seeing the police, and to make a throwing gesture with his arm – and still be innocent of a crime. None of these facts alone would support probable cause to arrest a suspect. However, assessing all the facts and circumstances presented in the arresting officer's sworn testimony, the Court finds – albeit by a very narrow margin – that Corporal Finley had probable cause to arrest Lozada-Olmo. Accordingly, the Court finds that the cash evidence would have been properly discovered upon Lozada-Olmo's detention and booking. The Court therefore concludes, as did the state court, that the seizure of the cash evidence did not violate Lozada-Olmo's Fourth Amendment rights.

## ORDER

**IT IS ORDERED THAT:**

1. Defendant's Motion in Limine (Dkt. 53) is **GRANTED** in part and **DENIED** in part.

2. Consistent with this decision, evidence of prior bad acts will be excluded under Rules 403 and 404(b), subject to the Court reconsidering this decision should the evidence at trial require that the Court do so.

**MEMORANDUM DECISION AND ORDER – 15**

3. The Government will not be permitted to use evidence of Lozada-Olmo's guilty plea to impeach him under Rule 609.

4. The Defendant's motion to suppress the cash evidence based upon it having been seized in violation of Lozada-Olmo's constitutional rights is denied.

DATED: October 27, 2011

_____
B. Lynn Winmill
Chief Judge
United States District Court